## HADDOCK *v.* STEWART

[No. 302, September Term, 1962.]

*Decided June 27, 1963.*

■

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Z. Townsend Parks, Jr.* and *H. Emslie Parks,* for appellant.

*Charles E. Hogg,* with whom was *Charles A. Reese* on the brief, for appellees.

SYBERT, J., delivered the opinion of the Court.

The appellant, Joseph W. Haddock, brought suit in the Circuit Court for St. Mary's County against the estate of Thomas Gerald Hill and the appellee, James B. Stewart, Jr., for injuries and property damage sustained by him in a three-car collision which resulted, he alleged, from an illegal automobile race between Hill and Stewart. On removal to the Circuit Court for Howard County the case was tried before a jury. At the close of the plaintiff's case the court, upon motion, directed a verdict for the defendant Stewart on the ground that there was no legally sufficient evidence that he had engaged in a race with Hill, and Haddock appeals from the judgment entered in favor of Stewart. A judgment obtained by Haddock against Hill's estate is not involved in this appeal.

The unfortunate accident, which claimed two lives, occurred at about 5 P.M. on January 31, 1961, near Bryantown in Charles County. Haddock was proceeding north on State Route 5 toward Waldorf, about five or six car lengths behind another automobile operated by a Lieut. Commander Baker, both running at about 45 miles per hour. As the two vehicles were following a gradual curve to the right in the road, a third automobile being operated by Hill in the opposite direction at a high rate of speed, went out of control, crossed over the centerline of the highway and collided with the Baker car head-on. It then caromed off and struck the Haddock vehicle broadside. Baker and Hill were killed and Haddock was seriously injured.

The width of Route 5 at the scene does not appear, but a photograph admitted in evidence shows it to be a two-lane paved road of average width, divided by a solid double line. The testimony was that the shoulders were covered by a few inches of snow, but that the traveled portion was dry and clear. The speed limit was 50 miles per hour.

The appellee, Stewart, said he was 600 to 800 feet behind Hill when the accident occurred and that he saw only Hill's collision with Baker's car. He testified he observed the Hill vehicle "hit the soft shoulder, his car skidded around and he cut back into the highway and skidded into the oncoming car."

Haddock said he didn't see the Hill car until it crashed into the Baker vehicle and then came toward him. He did not see the Stewart automobile at all. Hill being dead, Haddock had perforce to rely upon the testimony of Stewart in his effort to show that the latter had engaged in a speed contest with Hill. The plaintiff called Stewart as his witness, and the substance of his testimony follows.

Stewart, who lived in Bryantown, had stopped in a service station in Waldorf to buy some gasoline. Hill pulled in behind him and got out of his car, but did not purchase any gasoline. Stewart said that he didn't know Hill and that they had no conversation then or at any other time. Stewart was 21 years of age; Hill (it was otherwise proved) was 23. Both were driving black 1958 Chevrolet Impalas, Stewart's automobile having been altered to lower the rear part of the body.

Stewart left the gas station and headed south on Route 5 toward Bryantown, about 7 miles distant. He said he did not see the Hill car again until, about a mile and a half out of Waldorf, Hill pulled alongside him on a curve at the top of a hill. Stewart said he was going 45 to 50 miles per hour, and that Hill ran abreast of him and waved for him to come on—indicating a challenge to race. Stewart testified that "I pulled almost off the road so he could get back in the right lane, something could have been coming up over the hill." After passing Stewart, Hill speeded up his car and, although Stewart continued down the road, he said he drove at only 45-50 miles per hour. Three times thereafter, Stewart testified, Hill slowed down and waited for him to catch up, whereupon Hill would wave him on and speed up again. The last time this happened, Stewart said, was about a mile from the point of the accident. He testified that Hill sped away at about 80 miles per hour, but that he maintained his own speed at 55 miles per hour. He stated that he had refused on each occasion to participate in a race, and in fact had not done so.

The appellant relies strongly upon a signed statement which his counsel obtained from Stewart a week after the accident, reading in part: "He waived [sic] to me to race him. I didn't race and all the way from Waldorf for about seven miles (to Bryantown) he kept speeding up and then waiting for me to get up to him and then would waive [sic] for me to race him. I was going between 60 and 70 m.p.h. coming down the road and at times he would go up to 80 m.p.h." The appellant maintains that Stewart's admission of high speed requires the conclusion that he was racing with Hill. On the stand, however, Stewart (who said he had completed only seven grades in school) testified that he had only told counsel that he *might* have gotten up to 60-70 miles per hour, and said: "I don't remember going sixty and seventy. I might have when I passed some cars down the road. That would be the only time." He said he passed the cars about three miles from where the accident occurred, and that Hill had passed them "long before I did". It is noted that in the statement Stewart denied racing with Hill.

The sole question raised by this appeal is whether there was sufficient evidence, viewed in the light most favorable to the plaintiff, that the defendant Stewart gave assistance or encouragement to the tortious conduct of the deceased, Hill, so as to have warranted the submission of the issue to the jury. Under the generally accepted rule, if Hill and Stewart were racing their automobiles at the time of the accident, they were equally responsible for any damage or injuries caused by an accident growing out of the illegal race, even though Stewart was not actually involved in the collision. As was stated in 60 C.J.S., *Motor Vehicles,* § 297, often cited by the courts of various jurisdictions in racing cases:

> "Racing motor vehicles on a public highway is negligence, and all those who engage in a race do so at their peril, and are liable for an injury sustained by a third person as a result thereof, regardless of which of the racing cars actually inflicted the injury, or of the fact that the injured person was a passenger in one of the cars."

Code (1957), Art. 66½, sec. 210, prohibits and penalizes racing on the highways. See also 1 Blashfield, *Cyclopedia of Automobile Law and Practice* (perm. ed.), § 761; 2 Berry, *Automobiles* (7th ed.), § 2.398, p. 467; *Restatement of Torts,* § 876 (Persons Acting in Concert).

Generally speaking, the question of fact whether two individuals were racing is one for the jury. 1 Blashfield, *ibid.;* see also *Jones v. Northwestern Auto Supply Co.,* 18 P. 2d 305 (Mont. 1932). However, the appellee contends that in the instant case there was no legally sufficient evidence of racing which would have justified the court's submission of this issue to the jury. Since it is clear that Hill was attempting to involve the appellee in a race or contest of speed, the issue resolves itself into whether or not the evidence, and reasonable inferences deducible therefrom, were sufficient to support the conclusion that this challenge was responded to and acted upon by the appellee.

We think that the reasoning of Judge Macgill, in granting Stewart's motion for a directed verdict below, was correct. He said, in part:

> "* * * you, in my opinion, don't have any sufficient evidence, even taking everything most favorable to the Plaintiff. You have nothing here to indicate except conjecture that Mr. Stewart was racing. There is nothing to indicate that he encouraged Mr. Hill to race. * * * All you have really is some evidence of excessive speed or speed greater than the speed limit on the part of Mr. Stewart at certain points along the highway. I notice reference was constantly made to the fact that there was no occasion unless Mr. Stewart was engaged in racing for him to pass the other cars. Of course that, to me, is sort of a non sequitur. * * * Go out on the highway, any time you want, you see cars speeding up and going sixty to pass other cars; they're not necessarily engaging in a race. So that, in itself, doesn't seem to me to cast any particular light on the situation. To let this go to the

Jury, it seems to me would require a rejection of a good deal of what Mr. Stewart said. You have to throw out all his testimony as to Mr. Hill waving him on, on a number of occasions, and you have to simply isolate and take his testimony as to his exceeding the speed limit and inferring from that practically all we can infer, plus the fact he'd seen his car before that he was engaged in a race or encouraging Hill to race. There isn't any direct evidence that he did so. It may be a suspicious matter. We can't let this matter go to the Jury to speculate * * *."

We think the fact, as previously noted, that the last time Hill slowed down and again challenged Stewart to race occurred only a mile from the point of the accident, emphasizes the correctness of Judge Macgill's conclusion. It would seem a reasonable inference that this episode, as well as the previous ones, would not have happened if in fact Stewart had been racing Hill. The proximity of the final challenge would seem, however, to explain the fact that Stewart was only 600 to 800 feet from the scene of the accident when it occurred.

In support of his argument that the evidence before the trial court was sufficient to permit a reasonable inference that the appellee responded to the challenge of Hill, the appellant cites the cases of *United Rwys. & Elec. Co. v. Perkins,* 152 Md. 105, 136 Atl. 50 (1927), *Nelson v. Nason,* 177 N. E. 2d 887 (Mass. 1961), and *Bybee v. Shanks,* 253 S. W. 2d 257 (Ky. 1952). However, the opinions in those cases reveal that in each case there was either direct evidence, or ample basis for a reasonable inference, that the defendant had engaged in a contest of speed, and hence those cases are distinguishable.

In our opinion, the evidence produced to show involvement of the appellee in a speed contest, warranting his being held guilty of such negligence as would constitute a proximate cause of the accident, does not rise above surmise and conjecture, and therefore the issue was properly withdrawn from the jury. Cf. *State v. Hopkins,* 173 Md. 321, 196 Atl. 91 (1938) ; *McIntyre v. Saltysiak,* 205 Md. 415, 109 A. 2d 70 (1954).

*Judgment affirmed; costs to be paid by appellant.*