**Ark Kee LEE and Oliva Lee,
Appellants,**

v.

**Marlene C. WHEELER, et al.**

No. 86–5339.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 10, 1986.

Decided Feb. 10, 1987.

Thomas A. Gentile, with whom Harry W. Goldberg, Chevy Chase, Md., was on the brief, for appellants.

Joseph Patrick Clancy, with whom Richard L. Fritts, Chevy Chase, Md., was on the brief, for appellees.

Before BORK and STARR, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

The issue in this case is whether an insurance policy covering Maryland residents provides recovery for damages sustained in an accident involving a "phantom" vehicle in the District of Columbia, where no physical contact occurred between the vehicles. We conclude that Maryland law governs the contractual relationship between the

policyholders and their insurance company, but that Maryland's law is sufficiently unclear so as to warrant certifying to the Maryland Court of Appeals the question whether state law mandates coverage in the situation at hand.

## I

On April 27, 1980, Ark and Oliva Lee, residents of the State of Maryland, were driving their car in the District of Columbia. As they proceeded, a vehicle operated by Marlene Wheeler swerved to avoid an unidentified vehicle that suddenly entered her traffic lane. In so doing, Ms. Wheeler struck the Lees' vehicle head-on. Both the Lees sustained serious physical injuries.

The Lees subsequently filed suit against Wheeler in the United States District Court for the District of Columbia, invoking diversity jurisdiction, 28 U.S.C. § 1332 (1982). The Lees also joined their insurer, Pennsylvania General Insurance Company (Pennsylvania General), seeking coverage under the policy's uninsured motorist provisions for the damages sustained as a result of the phantom's negligence.

In March 1983, Pennsylvania General moved for summary judgment, claiming that the insurance policy held by the Lees expressly required physical contact with the phantom vehicle in order for the uninsured motorist coverage provisions of the policy to apply. That coverage limitation, Pennsylvania General further argued, was permissible under District of Columbia law. The District Court denied the motion, without explanation.

In November 1983, Pennsylvania General revived its argument that District of Columbia law applied and moved for dismissal. Although the Lees were residents of Maryland, their automobile was titled and registered in Maryland, the original insurance policy and all renewals were addressed and mailed to the Lees' Maryland residence, and all premiums were paid and mailed from the Lees' Maryland residence, Pennsylvania General contended that the policy was nonetheless governed by District of Columbia law because the Lees furnished to the insurance agent their application and initial premium in the District, where the Lees operated a restaurant.

The Lees denied that the application and initial premium, whatever their probative value, had been delivered in the District and emphasized the various nexi mentioned above with the State of Maryland. Nonetheless, after a brief hearing in November 1983, the District Judge orally granted Pennsylvania General's motion to dismiss. No findings of fact or conclusions of law were provided.

The District Court certified the judgment in favor of the insurer for interlocutory appeal on January 4, 1984, and on January 16, 1984, a Petition for Permission to appeal was filed. Permission was denied, however, on March 20, 1984. The case thus continued in District Court where the Lees' claim against Wheeler was eventually resolved in their favor.[1] The Lees then appealed the earlier dismissal of their claim against Pennsylvania General. *See supra* note 1.

## II

Before this court, Pennsylvania General has not pressed its earlier argument that the Lees' insurance policy was formed in the District of Columbia. Instead, it contends that District of Columbia law applies because the accident occurred in the District.[2] We disagree.

The case, as now before us, presents solely issues of contract and state statutory law. With the resolution of the Lees' claims against Wheeler, all tort aspects of the litigation have dropped out. We are thus presented with a contract action concerning what is clearly a Maryland contract. In this situation, we hold that Mary-

---

1. Although the Lees each recovered $5,000 from Wheeler for her negligence, they have not yet recovered for the damages attributable to the phantom's negligence.

2. The policy did not include a choice-of-law provision.

land law governs. The fact that the accident occurred in the District does not endow the District with an interest in the *contractual* relationship between the contracting parties.[3] Accordingly, we look to Maryland law to determine whether the insurance policy covered damages sustained in a non-impact accident with a phantom vehicle outside the State of Maryland.

As we previously observed, the Lees' insurance policy required physical contact with the uninsured vehicle in order for recovery to lie, a requirement that the Lees are unable, of course, to satisfy. The Lees nevertheless contend that under Maryland law a "physical contact" limitation on recovery is void, and that they are therefore entitled to recover. Pennsylvania General strenuously disagrees. To resolve this question, we turn to Maryland's Insurance Code.

Section 541 of the Code requires insurance companies to provide certain minimum uninsured motorist coverage. Md.Ann. Code art. 48A § 541 (1985). *See State Farm Mutual Insurance Company v. Maryland Automobile Insurance Fund,* 356 A.2d 560 (1976). Specifically, section 541(c)(2) provides: "In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243H and 243–I." This provision thus refers us to two other sections of the Insurance Code.

Section 243H does not expressly pertain to the terms of insurance coverage; rather, it defines the types of claims that can be made against the Maryland Automobile Insurance Fund, a state-financed fund designed to protect innocent persons injured by uninsured or inadequately insured motorists. *See State Farm,* 356 A.2d at 561 n. 1. With regard to accidents caused by phantom vehicles, the provision states that

the following claims may be made against the Fund:

Claims for the death of or personal injury to a qualified person or for damage to property in excess of $100 arising out of the ownership, maintenance or use of a motor vehicle *in this State* where the identity of the motor vehicle and of the operator and owner thereof cannot be ascertained or it is established that the motor vehicle, at the time the accident occurred, was in the possession of some person other than the owner without the owner's consent and that the identity of the person cannot be ascertained.

Md.Ann. Code art. 48A § 243H(a)(1) (emphasis added). Section 243–I, in turn, defines the dollar amount of recovery available.

Pennsylvania General contends that section 243H(a)(1) expressly limits permissible claims to those arising out of accidents occurring within the State of Maryland. Since the Lees' accident occurred in the District, the argument goes, Maryland law does not require coverage.

The Lees, on the other hand, argue that section 243H(a)(1)'s geographical limitation was intended only to restrict claims against the State's Automobile Insurance Fund to accidents occurring within Maryland. In their view, where, as here, the Fund is not triggered, the in-Maryland restriction serves no purpose and should be ignored. In support of their argument, the Lees point to the liberal construction that the Maryland courts have uniformly afforded the uninsured motorist statute. *See, e.g., Nationwide Mutual Insurance Co. v. Webb,* 436 A.2d 465, 475 (1981); *State Farm,* 356 A.2d at 562. In addition, a parsing of the statutory language suggests the possibility that section 243H(a)(1) can apply to accidents that occur outside of Maryland. The statute refers to claims

---

**3.** Naturally, the State in which an accident occurs has a substantial interest in *tort* liability, but, as we have noted, tort issues are not before us.

We also observe that the District of Columbia does have an interest in ensuring that the Lees carried the insurance required by D.C.'s No-

Fault Insurance Act when operating a vehicle within the District of Columbia. *See* D.C. Code Ann. §§ 35–2103(a), (b), 35–2104 (1985 Supp.). It is not disputed, however, that the Lees' insurance policy comported with the strictures of D.C. law. It thus seems to us that the District has no interest in *this* case.

"arising out of the ownership, maintenance, or use of a motor vehicle in this State...." To construe that language as barring recovery whenever the accident occurs in another State would seemingly deprive the words "maintenance" and "ownership" of much, if not all, independent significance. In other words, the statutory language at least admits of the possibility that a claim could arise out of the ownership of an automobile in Maryland, even though the accident occurred elsewhere.

Thus, notwithstanding the in-State provision found in the pertinent statute, we find ourselves uncertain as to an important point of Maryland law, and we have found no pertinent cases from that State authoritatively to guide us.[4] Happily, the State of Maryland provides a procedure for federal courts to certify determinative questions of state law to the Maryland Court of Appeals. Md.Cts. & Jud.Proc.Code Ann. § 12–601 (1984). By employing that procedure, we can avoid the hazards of attempting to forecast how the Maryland courts might rule and afford the Maryland Court of Appeals the opportunity to address a not insubstantial issue under the law of that State. *See Lehman Brothers v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974) (certification of uncertain questions "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism"); *Clay v. Sun Insurance Office*

*Limited,* 363 U.S. 207, 212, 80 S.Ct. 1222, 1225, 4 L.Ed.2d 1170 (1960) (Florida statute "which permits a federal court to certify ... a doubtful question of state law" is an example of "rare foresight"). *See also Elkins v. Moreno,* 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978) (certifying question to Maryland Court of Appeals); *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) (certifying question to Supreme Judicial Court of Masschusetts); *Walko Corp. v. Burger Chef Systems, Inc.,* 554 F.2d 1165 (D.C.Cir.1977) (certifying question to Maryland Court of Appeals).

We thus certify the following question to that court and respectfully request its opinion thereon:

> Under an automobile insurance policy covering Maryland insureds, is a provision in that policy requiring physical contact between the insureds' vehicle and the phantom vehicle lawful and enforceable under Maryland law where the accident occurs outside the State of Maryland?

*So ordered.*

---

**4.** *Reese v. State Farm Automobile Ins. Co.,* 285 Md. 548, 403 A.2d 1229 (1979), supports, at least implicitly, the latter construction of the statute. There, the Maryland Court of Appeals permitted the owner of a Maryland insurance policy to sue his insurer under the uninsured motorist provisions of the Maryland Insurance Code, even though the accident occurred in Virginia. The court, however, did not specifically address the issue whether the uninsured motorist provisions mandate coverage of accidents occurring out-of-state to Maryland car owners. We are reluctant, therefore, to view the case as resolving the question.